

IN THE
TENTH COURT OF APPEALS

No. 10-08-00073-CV

BRET "DOC" BERKMAN,

Appellant

v.

CITY OF KEENE,

Appellee

From the 249th District Court
Johnson County, Texas
Trial Court No. C200600426

## DISSENTING OPINION

The Court errs. The trial court did not. The contract at issue in this proceeding does not create a covenant running with the land.

Because the entire case is about a relatively short contract, and because the majority does not, I will provide the reader with the full text of the contract. It is as follows:

THE STATE OF TEXAS    )(

        KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF JOHNSON    )(

WHEREAS, LASZLO VARGA and wife, AMINE VARGA, are the owners of a certain 31.8 acre tract as described in Volume 637, page 430, Johnson County Deed Records; and

WHEREAS, the property is currently being used as a home for children who are wards of the State of Texas, and is doing business under the name Odyssey Harbor; and

WHEREAS, LASZLO VARGO and wife, AMINE VARGA, are contemporaneously with the execution of this agreement, executing a warranty deed, a true and correct copy of which is attached hereto as Exhibit "A", for a recited consideration of $10.00 and other good and valuable consideration; and

WHEREAS, it is the intent of this agreement to set out the consideration for the execution of the deed shown as Exhibit "A" hereto.

THEREFORE, KNOW ALL MEN BY THESE PRESENTS: That we, LASZLO VARGA and wife, AMINE VARGA (hereinafter VARGAS) and the City of Keene, Texas, a Municipal Corporation, (hereinafter CITY) do make the following agreement:

(1)      CITY agrees to furnish metered water from the City Water System to the 31.8 acre tract through two water taps and meters in an amount not to exceed 100,000 gallons per month, or 1,200,000 gallons per year, cumulative. The monthly amount may be exceeded, so long as the yearly maximum amount is not exceeded. No charge shall be made for water which does not exceed the yearly maximum. Rates for water usage over and above the yearly maximum shall be based on the City's then current water rates, with the yearly maximum to be equal to zero (0) gallons on the City's rates.

Should the VARGAS not use their yearly maximum in any one year, the amount not so used may not be accumulated and used during any succeeding year. The first twelve (12) month period for determining the amount of water usage shall begin on January 1, 1986 and end on December 31, 1986.

Sewer service shall be furnished to the VARGAS by the CITY through existing sewer lines on the same basis. The CITY shall not be obligated to construct any additional sewer lines nor will the CITY be required to construct sewer service to any building now located or to be located on the real property. However, the CITY does agree that any sewer service furnished to any buildings on said tract shall be furnished at no charge to the VARGAS and through existing sewer lines up to 1,200,000 gallons of water usage as measured by the above mentioned water meters.

(2)     If the property is used on a continuous basis from the date of this agreement forward as a home for children who are wards of the State of Texas then the CITY shall furnish said water and sewer service as heretofore set forth for a period of thirty-five (35) years.  In the event that the property ceases to be used as a home for children who are wards of the State of Texas then the term of this agreement shall be for a period of twenty (20) years.

(3)     The VARGAS agree to petition CITY for annexation of the said 31.8 acre tract within two (2) years from the date of this contract.

(4)     The VARGAS have the right to transfer and assign to any party any rights that they may have under the terms of this agreement and such assignee shall have all the rights, privileges, and duties hereunder.

(5)     This agreement shall be construed under and in accordance with the laws of the State of Texas and all obligations of the parties created hereunder are performable in Johnson County, Texas.

(6)     This agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns where permitted by this agreement.

(7)     In case any one or more of the provisions contained in this agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision thereof and this agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

(8)     Both parties agree that upon the execution of this agreement and the deed attached as Exhibit "A", the lease agreement covering the 31.8 acre tract shall be terminated and of no further force and effect.

(9)     This agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the within subject matter.

WITNESS our hands, this 11th day of April, 1986.

When the contract is read in its entirety and non-material provisions are not given undue weight, the following is made clear by the express terms of the contract:

1.  This contract is part of the consideration, the purchase price, paid by the City for the real property conveyed by the Vargas to the City in an

entirely separate document (thus, it is like a note for future payment of water and services rather than money);

2. The City agreed to pay in the form of future delivery of water and sewer services of 1,200,000 gallons per year for a determined period;

3. The period was determined by reference to the use being made of a particular tract of land;

4. While delivery of the water and sewage service was discussed in reference to the property, it was not exclusively limited to that property;

5. Without reference to the real property, the rights of the Vargas under the contract could be assigned; and

6. The rights under the contract pass to the parties' successors and assigns.

Further, it is undisputed that the Vargas never assigned their rights under this contract to anyone.

It is paragraph 4 of the contract that is particularly fatal for Berkman's claim. Under that provision, the Vargas clearly had the right to assign the right to receive water and sewer services, subject to the limit on amounts thereof, to a third party. Thus, this contract for payment did not, and was never intended to, create a covenant running with the land that Berkman purchased.

It is this ability to assign the right to receive water and sewer service at a location other than the property that destroys any suggestion that the agreement touched or concerned the land owned by Berkman. For sure, when the contract was made, the parties anticipated delivery of water and sewer services would be to the property and designated that location in the agreement. But just because that was the initially

designated delivery location and service point did not mean that the delivery location and service point could not change. In fact, that is what paragraph 4 allowed.

The contract to be paid in a specified volume of water and sewer services was a part of the price the City agreed to pay for the property. It would not, should not, and according to the contract, did not matter to them to where it was delivered.

Because Berkman did not show he was an assignee of the right to receive the water and sewer services, and because such contractual rights did not touch or concern land such as to be a covenant running with the land, I would affirm the trial court's judgment. Because the Court does not, I respectfully dissent.


TOM GRAY
Chief Justice

Dissenting opinion delivered and filed July 15, 2009.